## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ROY J. MCCONNELL, | ) | Case No. 06-70724-JAD |
| | ) | |
| | ) | |
| Debtor. | ) | Chapter 13 |
| | ) | |
| _____ | X | |
| | ) | |
| ROY J. MCCONNELL, | ) | |
| | ) | |
| | ) | Adversary No. 07-07034-JAD |
| Plaintiffs, | ) | |
| | ) | Related To Document No. 7 |
| vs. | ) | |
| | ) | |
| K-2 MORTGAGE, d/b/a THE REAL | ) | |
| ESTATE CLOSING COMPANY, LLC, | ) | |
| DECISION ONE MORTGAGE | ) | |
| COMPANY, LLC, WASHINGTON | ) | |
| MUTUAL HOME LOANS, M & T | ) | |
| BANK, COUNTRYWIDE HOME | ) | |
| LOANS, and HSBC MORTGAGE | ) | |
| SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | X | |

Appearances:   Mary K. Wheeler, Esq., for the Debtors/Plaintiffs
Michelle K. Carson, Esq., for Decision One Mortgage
Company and HSBC Mortgage Services

## MEMORANDUM OPINION

This Memorandum Opinion constitutes the Court's findings of fact and

conclusions of law pursuant to Fed.R.Bankr.P. 7052.  The matter before the Court

00001915.WPD

is a *Motion To Dismiss Pursuant To Fed.R.Bankr.P. 7012 and Fed.R.Civ.P. 12(b)(6)* ("Motion To Dismiss"), which has been filed by defendants Decision One Mortgage Company, LLC ("Decision One") and HSBC Mortgage Services, Inc., ("HSBC Mortgage"). The Motion, insofar as it challenges the Plaintiff's standing to prosecute this Adversary proceeding, has been joined by defendant Countrywide Home Loans ("Countrywide").

## I.

In evaluating a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as incorporated herein by Federal Rule of Bankruptcy Procedure 7012, the Court must assume the facts alleged in the Complaint to be true and draw all factual inferences in favor of the non-moving party. In re Loranger Mfg. Corp., 324 B.R. 575, 577-78 (Bankr. W.D.Pa. 2005) (citing Schrob v. Catterson, 948 F.2d 1402, 1405 (3d Cir. 1991)). In order for a motion to dismiss to be successful, it must be clear that no relief could be granted to the plaintiff under any set of facts that could be proved consistent with the allegations in the complaint. Lum v. Bank of America, 361 F.3d 217, 223 (3d Cir. 2004) (citing Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232 (1984)).

For the reasons set forth below, the Court finds that the Motion to Dismiss has merit. As a result, an Order will be entered which dismisses this Adversary Proceeding without prejudice to the Plaintiff filing a curative amendment within twenty (20) days.

## II.

The causes of action in the Complaint consist primarily of various lender liability type claims against all of the defendants, including a claim for fraud (Count I), a claim for predatory lending (Count II), and a claim for alleged violations of the Pennsylvania Unfair Trade Practices And Consumer Protection Law (Count IV).[1]

The factual allegations in the Complaint are not lengthy, and consist of the following:

- In early 2005, K-2 Mortgage solicited the Plaintiff about possibly refinancing the mortgage on Plaintiff's residence. (Docket No. 1, ¶14).[2]

- At some point in either January or February of 2005, the Plaintiff agreed to a refinancing, and the Plaintiff understood that the proceeds of the refinancing were to be used to satisfy an existing mortgage on his residence in favor of Washington Mutual and to payoff a vehicle loan owing M & T Bank. (Id. at ¶¶ 15 - 18). The Plaintiff also understood that the amount of the refinancing would be such that he would have a surplus of funds, and that the surplus would be used by the Plaintiff to make repairs to his residence. (Id.).

- On or about Friday, February 4, 2005,[3] a representative of K-2 Mortgage visited Plaintiff's home for purposes of closing on the proposed refinancing. (Docket No. 1, ¶ 19). During this meeting, the Plaintiff was accompanied by an acquaintance of his, a woman named Margaret Helsel, who is a co-debtor with respect to the

---

[1] The lawsuit also included a cause of action seeking a determination that certain mortgagees against the Plaintiffs were unsecured because an assignment of mortgage was not recorded. (*See* Count III of the Complaint). The Plaintiff, however, has withdrawn that count of the Complaint voluntarily.

[2] The docket in this case refers to the docket of Adversary Proceeding No. 07-07034JAD, unless otherwise specified in the citation. Though not identified in the Complaint, the Court takes judicial notice that the residence referenced in the Complaint is located at RR2, Box 766, Altoona, PA. (*See* Bankr. Case No. 06-70724-JAD, Docket No. 1, Schedule A).

[3] The Complaint contains a typographical error, and states that the year was 2004, when it was in-fact 2005.

refinancing. (Id.); (*see also* Bankr. Case No. 06-70724-JAD, Docket No. 1, Sch. H).

• Ms. Helsel invited the representative into the Plaintiff's home so that the Plaintiff, Ms. Helsel, and the K-2 Mortgage representative could review and sign the necessary paperwork. (Docket No. 1, ¶ 19). Because the representative of K-2 Mortgage "was in a hurry," Plaintiff was allegedly precluded by K-2 Mortgage from reviewing the loan documents or asking questions about their content. (Id.).

• The Plaintiff, and Ms. Helsel, nonetheless executed the loan documents. Once the documents were signed, the representative of K-2 Mortgage departed with the signed paperwork, and left unsigned copies with the Plaintiff. (Id.).

• Over the weekend, the Plaintiff and Ms. Helsel attempted to read and review the documents that they had just signed. (Id. at ¶ 20). On the following Monday, February 7, 2005, Ms. Helsel contacted K-2 Mortgage and allegedly orally requested a recision of the loan that she and the Plaintiff had agreed to just a few days earlier. (Id. at ¶ 21). She was allegedly advised by K-2 Mortgage that it was "too late" to rescind the transaction because the loan documents had already been "sent . . . in for processing." (Id.).

• The HUD-1 settlement statements attached to the Complaint are dated February 10, 2005 and list a disbursement date of February 15, 2005. (Docket No. 1, Exhibits 1 and 2). There is no explanation in the Complaint as to the varying dates between the HUD-1 settlement statement and the Plaintiff's allegation as to when the documentation provided by K-2 Mortgage was signed by the parties.

• The refinancing was in the form of two loans. In the settlement statements, Decision One Mortgage Company, LLC is identified as the lender and The Real Estate Closing Company is identified as the settlement agent for both loans. (Id.).

• With respect to the first loan, it was for $78,400.00, and settlement charges of $7,108.26 were incurred with respect to the closing of the same. (Docket No. 1, Exhibit 1). However, at closing two disbursements were actually to be made (one to Washington Mutual and one to M&T Bank) totaling $89,421.37 in aggregate.[4] (Id.). The

---

[4] This number is reflected on the loan document as the aggregate of the $71,051.37 given to Washington Mutual and the $18,370.00 given to M&T Bank.

settlement statement with respect to the first loan states that the Borrowers, (*i.e.*, the Debtor and Ms. Helsel) would have to disburse $18,129.63. This sum is essentially the shortfall between the amount of the first loan and the aggregate amount of the settlement charges coupled with the amounts owing to Washington Mutual and M&T Bank .[5] (Id.).

• With respect to the shortfall, the Plaintiff funded it with the second loan. The second loan amount was for $19,600.00 with a total settlement charge of $1,470.37. (Docket No. 1, Exhibit 2). Once the settlement charges were deducted from the total amount of the loan, there was a total amount of $18,129.63 remaining. (Id.). This amount was disbursed to The Real Estate Closing Company as indicated in Section M of the settlement statement entitled "Disbursement To Others." (Id.). There is no explanation in the Complaint as to why the transaction was structured as two loans as opposed to just one loan; and it is apparent from the Complaint that no loan funds were left over for the Plaintiff to make repairs to his property.

• Prior to the closing on the loans, representatives of K-2 Mortgage allegedly promised the Plaintiff, among other things, that the loan would be an "affordable fixed rate mortgage." (Id. at ¶14). However, from the inception of the closing on the two loans, Plaintiff was unable to maintain payments on these obligations. (Id. at ¶22). The Plaintiff therefore alleges that K-2 Mortgage "knew or should have known that the Plaintiff and his friend would be unable to sustain the debt load inflicted by the transaction described above." (Id. at ¶ 27).

## III.

In addition to the factual allegations set forth in the Complaint, the Court

notes that on September 21, 2006, the Debtor filed a voluntary petition under

Chapter 13 of the Bankruptcy Code. (Bankruptcy No. 06-70724JAD, Doc. No. 1).

The Plaintiff proposed a repayment plan in his Chapter 13 case, and the plan form

utilized by the Plaintiff states that "[p]roperty of the estate shall not re-vest in the

---

[5] This number was calculated by taking the total loan amount ($78,400.00) and subtracting the settlement charges ($7108.26) and the total disbursements to Washington Mutual and M&T Bank ($89,421.37).

Debtor until the bankruptcy case is closed." (Id. at Doc. 8).   This plan was

confirmed on an interim basis by order of the Court dated December 14, 2006,

and thus remains effective as of the date of this Memorandum Opinion. (Id. at

Doc. 14).

        The instant adversary proceeding was commenced upon the Plaintiff filing

the Complaint against the six named defendants on July 15, 2007, which was

more than two years after the closing of the loans at issue. (Docket No. 1).   The

Defendants Decision One and HSBC Mortgage filed their Motion To Dismiss on

August 17, 2007.[6] (Docket No. 7).   A hearing was held on the Motion To Dismiss

on January 18, 2008.

        At the hearing on the Motion to Dismiss, the Plaintiff acknowledged that K-2

Mortgage was not an agent of Decision One with respect to the matters set forth

in the Complaint, and that Decision One's role in this case is that it was merely

the entity that made the loans to the Plaintiff.   The Plaintiff, through counsel,

however suggested that the defendants acted "in concert" with K-2 Mortgage and,

as a result are equally liable for any alleged claims.

        It also is not disputed by the Plaintiff that Defendants HSBC Mortgage and

Countrywide had no involvement with the loans at issue.   Rather, subsequent to

the closing of the Decision One loans, both HSBC Mortgage and Countrywide

merely obtained an assignment of the Plaintiff's first and second mortgage,

respectively.   It was also acknowledged at the hearing on the Motion to Dismiss

---

[6] A Motion To Dismiss was originally filed at Doc. No. 6 on August 17, 2007.  The Defendants filed an amended Motion To Dismiss on the same day at Docket No. 7.

that the lawsuit in question is property of the bankruptcy estate.

At the January 18, 2008 hearing, the Court requested that the parties file supplemental briefs in support of their respective positions. Because some of the defenses raised by Decision One and HSBC Mortgage brought into question the ability of Chapter 13 debtors to commence suit against creditors when such claims are property of the estate, the Court also authorized the Chapter 13 Trustee to intervene on a limited basis to solely be heard on the issue of whether Chapter 13 debtors have the requisite standing to commence lawsuits such as the one before the Court. Defendant Countrywide also joined, in part, in the Motion to Dismiss filed by Decision One and HSBC Mortgage. The parties completed their briefing on April 14, 2008, and this matter is now ripe for decision.

## IV.

Decision One, HSBC Mortgage and Countrywide contend that all of the counts of the Complaint should be dismissed because the causes of action asserted by the Plaintiff constitute property of the estate solely "vested" with the Chapter 13 Trustee, and that the Plaintiff allegedly lacks the requisite standing to prosecute this case. The Court disagrees, and holds that the Plaintiff indeed has the requisite standing to prosecute this civil action.

There is no question that a debtor's pre-petition cause of action is property of the bankruptcy estate. *See* 11 U.S.C. § 541(a) (all "legal and equitable" interests of the debtor constitute property of the estate); *see also* <u>In re Tippins</u>, 221 B.R. 11, 16 (Bankr. N.D. Ala. 1998) (citing <u>United States v. Whiting Pools Inc.</u>, 462 U.S.

198, 205 & n.9, 103 S.Ct. 2309, 2313 & n.9 (1983)).  The Bankruptcy Code grants the trustee the power to use, sell, or lease property of the estate.  *See* 11 U.S.C. § 363.   However, in a Chapter 13 bankruptcy case, by virtue of Section 1303, a Chapter 13 debtor has the "rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f) and 363(l)" of the Bankruptcy Code.  *See* 11 U.S.C. § 1303. These powers include the power to "use, sell, or lease" property of the estate.  *See* 11 U.S.C. § 363(b).

The only way to "use" a cause of action is to bring suit upon it or settle it. Therefore, it follows that a Chapter 13 debtor has standing to prosecute pre-petition causes of action that constitute property of the estate.  *See* Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1209 n.2 (3d Cir. 1991)( "Chapter 13 debtors are empowered to maintain suit even after a bankruptcy trustee has been appointed in their case: an essential feature of a chapter 13 case is that the debtor retains possession of and may use all the property of the estate, including his prepetition causes of action, pending confirmation of his plan").

It is true that the confirmed Chapter 13 plan in this case provides that "[p]roperty of the estate shall not re-vest in the Debtor until the bankruptcy case is closed."  This plan provision does not change the Court's analysis.

The Bankruptcy Code provides that upon the commencement of the Chapter 13 case, and unless provided for in a confirmed plan or an order confirming a plan, the debtor remains in possession of all property of the estate. 11 U.S.C. § 1306(b).  Neither the confirmed plan at issue, nor any order of the Court, has

removed the Plaintiff from possession of estate property.   Thus, the Plaintiff remains a debtor-in-possession of property of the estate.

The confirmed plan in this case provides that estate property is "not re-vested in the Debtor until the bankruptcy case is closed."  This provision means that all of the legal and equitable interests of the debtor remain property of the bankruptcy estate (as opposed to merely property of the debtor) until his bankruptcy case has been administered.   This is the "belts and suspender" language used in this District's form Chapter 13 plan which is utilized to insure that the estate's interests have not been abandoned by virtue of the confirmation of the Chapter 13 plan.  This is an important provision in our District's confirmed plan because if the assets were to be abandoned, then the Chapter 13 trustee would be powerless to realize the assets for the benefit of creditors if the need should arise throughout the administration of the bankruptcy case.

Moreover, Bankruptcy Judge Stinnett has pointed out that possession of estate property and vesting of rights in property are two entirely different concepts. In re York, 291 B.R. 806, 815 (Bankr. E.D.Tenn. 2003); *see also* In re Krick,373 B.R. 593, 601 (Bankr. N.D.Ind. 2007) (looking to other areas of law and determining that concepts of vesting and possession are distinct).   The key distinction is the ***right to*** the property and ***actually having possession or use of*** the property.  In a Chapter 13 setting, "control and oversight of the property are divided between the debtor and the bankruptcy trustee or may be shared by them." In re York, 291 B.R. at 815.   It is clear from a textual standpoint that

under Chapter 13 of the Bankruptcy Code the debtor retains possession of property of the estate even though the language of the confirmed plan indicates that the property of the estate vests with the trustee. *See* 11 U.S.C. § 1306(b). Given this distinction, it is apparent that while a debtor may have possession of the property and may use it, he or she can only do so consistent with the debtor's duties to creditors under Chapter 13 of the Bankruptcy Code. Absent this distinction, a Chapter 13 debtor could use property at his or her own whim without regard for the interests of creditors as provided for in the debtor's chapter 13 plan. This is something that the provisions of Chapter 13 of the Bankruptcy Code are designed to avoid.

A look at the legislative history of 11 U.S.C. § 1303 further emphasizes the fact that Congress intended for a Chapter 13 debtor to have the ability to sue on behalf of the estate. The legislative history states in relevant part that 11 U.S.C. § 1303 "does not imply that the debtor does not also possess other powers concurrently with the trustee. For example, although section 1323 [sic] is not specified in section 1303, certainly it is intended that the debtor has the power to sue and be sued."[7] In re Griner, 240 B.R. 432, 437 (Bankr. S.D.Ala. 1999) (quoting 1214 Cong. Rec. H11, 106 (Sept. 28, 1978)). The legislative history to 11 U.S.C. § 323 is similar in that it states that

> Subsection (b) grants the trustee the capacity to sue and
> be sued. If the debtor remains in possession in a

---

[7] The "section 1323" referenced in Congressional Record and cited in In re Griner, 240 B.R. 432, (Bankr. S.D.Ala. 1999) presumably refers to 11 U.S.C. § 323 which is the provision of the Bankruptcy Code which confers upon the trustee the ability to sue and be sued. *See* 11 U.S.C. § 323.

> Chapter 11 case, section 1107 gives the debtor in
> possession these rights of the trustee: the debtor in
> possession becomes the representative of the estate, and
> may sue and be sued. *The same applies in a Chapter 13
> case.*

S. Rep. No. 95-989 at 37 (July 14, 1978); H.R. 95-595 at 326 (Sept. 8, 1978)

(emphasis added).

The Court also notes that there are prudential reasons for giving debtor standing to prosecute causes of action on behalf of the bankruptcy estate. One such prudential reason is the fact that the debtor, as opposed to the trustee is better equipped to bring such actions. In addition, some causes of action might very well be personal in nature to the debtor, and as such the trustee might be precluded as a matter of non-bankruptcy law from pursuing them.

The fact that the debtor is most often better equipped to prosecute pre-petition causes of action is particularly acute in a jurisdiction such as ours where the Chapter 13 Trustee is the sole standing trustee that has assumed the role of disbursing agent in thousands of cases. In this District, the Chapter 13 Trustee is simply not staffed in such a way to prosecute all of the pre-petition causes of action that could be valuable assets to the Chapter 13 bankruptcy estate. In this regard, the Bankruptcy Code recognizes this dichotomy between the role of a debtor-in-possession and the role of the Trustee in Chapter 13.

Thus, the Court's reading of the Bankruptcy Code, and the confirmed plan, is such that (a) the Chapter 13 debtor, as a debtor-in-possession, may use the estate's asset (i.e., the lawsuit) by prosecuting it; and (b) the lawsuit is estate

property, of which the ultimate proceeds may not be utilized by the debtor without

regard to his or her obligations to creditors under the confirmed plan. The Court

therefore finds Judge Stinnett's opinion in <u>In re York</u>, <u>supra</u> to be very persuasive

and will follow this decisions here. *See also* <u>Smith v. Rockett</u>, 522 F.3d 1080 (10th

Cir. 2008); <u>Autos, Inc. v. Gowin</u>, 244 Fed.Appx. 885, 889, 2007 WL 2269443 (10th

Cir. 2007). Therefore, the Motion to Dismiss of the defendants, insofar as it

challenges the standing of the Plaintiff is denied.

## V.

Closely tied to the issue of the Plaintiff's standing is whether some or all of

the claims asserted by the Plaintiff are barred by the applicable statute of

limitations. For example, Decision One and HSBC Mortgage contend that Count

I (Fraud) of the Plaintiff's Complaint is barred by the applicable statute of

limitations.

The statute of limitations on common law fraud in Pennsylvania is two

years. 42 Pa.C.S.A. § 5524(7). The alleged fraudulent conduct of the defendants

occurred sometime between January and February 2005, some two years and five

months before the filing of the complaint in this matter. The Bankruptcy Code,

at 11 U.S.C. § 108, contains a tolling provision which serves to toll statutes of

limitation upon the filing of a bankruptcy petition. The parties concede that if 11

U.S.C. § 108 applies, then the lawsuit filed by the Plaintiff is timely. Decision One

and HSBC Mortgage assert that Section 108 of the Bankruptcy Code does not

apply because only a bankruptcy trustee may invoke its provisions. The Court

disagrees.

Section 108(a) of the Bankruptcy Code states that

> If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) two years after the order for relief.

11 U.S.C. § 108(a).  It is this Court's opinion that Section 108(a) cannot be read in insolation in deciding whether it will apply to pre-petition causes of action that a Chapter 13 debtor prosecutes on behalf of the bankruptcy estate as a debtor-in-possession.

By way of analogy, various courts have looked at the provisions of Chapter 11 and have concluded that Chapter 11 debtors-in-possession have the same rights as a trustee under Section 108(a). *See* In re Flying "S" Land & Cattle Co., 71 B.R. 183 (Bankr. D.Nev. 1987) (holding that 11 U.S.C. § 103 and 11 U.S.C. § 1107(a) extended the privileges of 11 U.S.C. § 108(a) to a debtor-in-possession under Chapter 11); Rudin v. Tax Comm'n (In re Olympia & York Maiden Lane Co., LLC), 233 B.R. 662 (Bankr. S.D.NY 1999) (court could apply 11 U.S.C. § 108(a) to extend a limitations period to Chapter 11 Debtor/Plaintiff even though the underlying state law did not permit such an extension of time); Roberts v. C.I.R., 175 F.3d 889 (11th Cir. 1999) (acknowledging that § 108 extends the time period

for a trustee or debtor-in-possession to take actions under non-bankruptcy law); U.S. For Use Of American Bank v. C.I.T. Const. Inc. Of Texas, 944 F.2d 253 (5th Cir. 1991) (holding that while 108(a) will apply to actions brought by a trustee, and 11 U.S.C. § 1107(a) gives a debtor-in-possession the right to extend the statute of limitations under § 108(a), but a creditor is not conferred the same tolling power). This is a logical conclusion because under 11 U.S.C. § 1107(a) a Chapter 11 debtor-in-possession has all the rights and powers of a trustee (except the right to compensation). *See* 11 U.S.C. § 1107(a). The question therefore before the Court is whether a Chapter 13 debtor in possession should be afforded the same protections under 11 U.S.C. § 108. The Court answers this question in the affirmative.

Although less clear than in the Chapter 11 context, there is no reason why Section 108 of the Bankruptcy Code should not also apply to Chapter 13 debtors-in-possession prosecuting estate property, as the debtor is the representative of the estate in prosecuting the action. In re Gaskins, 98 B.R. 328, 330 (Bankr. E.D.Tenn. 1989). The case law surrounding this issue is scarce, and admittedly, some courts which have decided the issue have come to the opposite conclusion of this Court. *See* Estate of Carr ex rel. Carr v. United States, 482 F.Supp.2d 842, (W.D.Tex. 2007); In re Ranasinghe, 341 B.R. 556 (Bankr. E.D.Va. 2006); In re Craig, 7 B.R. 864 (Bankr. Tenn 1980). The reasoning in these cases, however, fails to recognize that the debtor in a Chapter 13 case is a debtor-in-possession by way of 11 U.S.C. § 1306(b), and that the debtor in a Chapter 13 case has the

ability to sue on behalf of the estate and thus is eligible for the same provisions

of the Code affecting the trustee's power. *See e.g.*, Part IV of this Memorandum

Opinion; Fed.R.Bankr.P. 6009; 1 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 54.1

(3d ed. 2000 & Supp. 2004).

In the context of Chapter 13, the term "debtor-in-possession" is not

specifically used.  However, pursuant to § 1306(b) of the Bankruptcy Code "the

*debtor* shall remain *in possession* of all property of the estate" except as provided

for in a confirmed plan or order confirming the plan. 11 U.S.C. § 1306(b)

(emphasis added).  This provision of the Code unequivocally makes the debtor in

a Chapter 13 case a debtor-in-possession.  To hold that a Chapter 13 debtor is not

a debtor-in-possession simply because those three words do not appear in

succession in Chapter 13 of the Bankruptcy Code makes no logical sense in light

of this language found in 11 U.S.C. § 1306(b).

The difference between a debtors-in-possession in Chapter 13 cases and

debtors-in-possession in Chapters 11 and 12 cases is that unlike debtors in

Chapters 11 or 12, Chapter 13 debtors are not debtors-in-possession vested,

generally, with *all* of the powers of a trustee. In re Dawson, Adv. No. 04-10083,

2008 WL 1700419, at *11 (Bankr. D.Dist.Col. April 9, 2008) (emphasis added).

Instead, the Chapter 13 debtor is only vested with some of the powers of the

trustee, including, *inter alia*, the power to possess property of the estate and sue

on causes of action which are themselves property of the estate. Id. at *12.  It is

incongruous to the statutory scheme in bankruptcy to find that the Chapter 13

debtors-in-possession have the ability to prosecute pre-bankruptcy causes of action, just like debtors-in-possession in Chapters 11 and 12, but find that Chapter 13 debtors do not have the protections afforded by 11 U.S.C. § 108.

The power to sue on behalf of property of the estate, as stated previously, is vested with the debtor by way of 11 U.S.C. §§ 1303, 363(b), and 323. The debtor, then, is implicitly vested with a trustee's capacity to sue on those causes of action. In re Dawson 2008 WL at *12. Thus, the Chapter 13 debtor "steps into the role of the trustee" and exercises the power of the trustee when suing on behalf of the estate. Id. at *13 (citing Cable v. Ivy Tech State College, 200 F.3d 467, 473 (7th Cir. 1999)). It would follow then that the extension of time provisions provided to a trustee under 11 U.S.C. § 108(a) applies to whomever is exercising the trustee's power to sue, including the Chapter 13 debtor. Id. at *13.

It is evident that Congress intended to grant a debtor under Chapter 13 the same ability to sue on behalf of the estate as a trustee, Chapter 11 debtor-in-possession, and a Chapter 12 debtor-in-possession. To read Section 108(a) so narrowly that it applies to every other entity "in possession" except the Chapter 13 debtor yields an absurd result. And "[i]t is the obligation of the court to construe the statute to avoid absurd results, if alternative interpretations are available and consistent with the legislative purpose." U.S. v. Schneider, 14 F.3d 876, 880 (3d Cir. 1994) (citing Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 575, 102 S.Ct. 3245, 3252 (1982)). It is the opinion of this Court that holding 11 U.S.C. § 108(a) applicable to Chapter 13 debtors suing on behalf of the estate is not only

consistent with the legislative purpose of the Code, but also the statutory text of the Code.  Therefore, the Motion To Dismiss as it relates to applicable statute of limitations is denied.

## VI.

Decision One and HSBC Mortgage allege that the Complaint fails because it contains no allegations whatsoever regarding any conduct of Decision One and HSBC Mortgage.  A reading of the complaint indeed seems to indicate that the crux of the allegations stem from the actions of K-2 Mortgage and their "successors in interest."  It is admittedly unclear whether Decision One and HSBC Mortgage are successors in interest to K-2 Mortgage, and nowhere in the Complaint does the Plaintiff even allege that these defendants are "successors in interest" to K-2 Mortgage.

At the hearing on the Motion to Dismiss, counsel for the Plaintiff suggested that the defendants other than K-2 Mortgage "acted in concert" with K-2 Mortgage, and are thus co-liable for any claims.  However, the Complaint is devoid of any allegations relating to conspiracy, aiding and abetting or other similar theories. Absent such allegations, the defendants have no knowledge as to the Plaintiff's claims and it is manifestly unfair to make them frame a response when the Court itself is unable to even understand the Plaintiff's complaint.  The Motion to Dismiss will therefore be granted insofar as the Plaintiff claims defendants, other than K-2 Mortgage, are somehow co-liable.  In addition, there are other deficiencies in the Complaint that are set forth more fully below. Dismissal,

however, is without prejudice as the Plaintiff will have 20 days to file a curative amendment to identify and assert its theory of co-liability.

### A.

Looking to the specific Counts of the Complaint, the defendants further contend that Count I should be dismissed because, even if a common law fraud claim is not time barred, the Plaintiff's Complaint fails to state a claim for fraud under Pennsylvania law.

This Court has previously held in In re Balko, 348 B.R. 684 (Bankr. W.D.Pa. 2006), the heightened pleading requirement of Fed.R.Civ.P. 9(b) applies equally to fraud counts premised on common law fraud. Id., at 694.  Thus, under the heightened pleading standard of Fed.R.Civ.P. 9(b), the plaintiff must plead fraud with particularity. Fed.R.Civ.P. 9(b).  This is so that, among other reasons, the defendants will have adequate notice of the claims against them, provide increase protection for their reputations, and help to reduce the number of frivolous lawsuits brought to extract a settlement. In re Balko, 348 B.R. at 694 (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997)).

Particularity requires the plaintiff to state more than conclusory allegations of fraud, and instead requires the plaintiff to specifically identify the time, place, and substance of each defendant's fraudulent conduct. In re Balko, 348 B.R. at 694 (internal citations omitted).  In addition, when a complaint names multiple defendants it should inform each defendant of their alleged participation in the fraud. Id. (internal citations omitted).

In the matter *sub judice* the plaintiff has alleged that "[t]he actions of K-2 Mortgage's Successors in Interest . . . in not reviewing the mortgages prior to purchasing the rights to the same constitute Common Law Fraud." (Docket No. 1, ¶ 38).  A careful reading of the entire complaint does not reference any alleged wrongdoing on the part of Decision One or HSBC Mortgage, or any other defendant save K-2 Mortgage.  The facts set forth in the body of the Complaint revolve around the conduct of K-2 Mortgage and their field representatives, and not the other defendants.  Again, there are no allegations of conspiracy or aiding and abetting, so the Court does not see any claims for co-liability in the present form of the Complaint.

Moreover, the complaint is silent as to what a review of the mortgage would have shown K-2 Mortgage's "successors in interest" and how such alleged facts would give rise to a claim for fraud.  The Complaint does not allege that any of the other defendants made misrepresentations to the Plaintiff about refinancing his mortgage, and the Complaint does not allege how the Plaintiff reasonably relied upon those misrepresentations.  Nor does the Complaint state exactly how an assignee of the mortgage would be personally liable for any conduct of K-2 Mortgage (and the Plaintiff's response to the Motion to Dismiss is silent on this issue as well).

The Complaint clearly does not meet the heightened pleading standard of Fed.R.Civ.P. 9(b) because the pleading is devoid of the substance of each defendant's alleged fraudulent conduct (namely, exactly what representations were

made by each defendant?  When were they made, and to whom?  Also, who relied

on such statements and to what extent?).  The only defendant named in which the

pleadings have met the required particularity is K-2 Mortgage.  As the Complaint

stands today, as to Count One for common law fraud, the Court must dismiss the

Complaint as to all defendants save K-2 Mortgage.  Dismissal is without prejudice

to the Plaintiff filing a curative amendment within twenty (20) days.

## B.

With respect to Count II of Plaintiff's Complaint, Decision One and HSBC

Mortgage urges the Court to dismiss it due to the fact that no generic "Predatory

Lending" cause of action exists under Pennsylvania law.

As an initial matter, the Court acknowledges that there is no common law

cause of action for "predatory lending."  Any claim for relief for predatory lending

practices must be supported by some statutory basis, and the Plaintiff has not

articulated any in its Complaint; nor has the Plaintiff articulated its legal theory

in its response to the Motion to Dismiss.

A court in this district has noted:

> Typically when the term "predatory" is associated with
> "lending" as part of the allegations in an adversary
> proceeding, such phraseology conjures up notions of
> violation of the Fair Debt Collection Practices Act, 15
> U.S.C. § 1692, et seq. or possibly some other federal or
> state unfair trade practice/consumer protection act
> violation.

In re Holler, 342 B.R. 212, 224 (Bankr. W.D.Pa. 2006).  In the matter before the

Court, the Plaintiff has not articulated any statutory basis for his allegation that

the defendants engaged in predatory lending practices.    The Plaintiff has complained about an oral rescission attempt that was ignored.  Reading between the lines, the Plaintiff also appears to suggest that inadequate disclosures were made; and perhaps questions exist as to why the mortgage was notarized on February 10th, but K-2 acknowledges that closing occurred on February 4th.  These facts, if true, may very well give rise to some claim under some consumer protection statute, such as the Truth-in-Lending Act (TILA), the Home Owner Equity Protection Act (HOEPA), the Real Estate Settlement Procedures Act (RESPA).   However, nowhere in Count Two of the Complaint is there an allegation of any statutory violation, and the Plaintiff cites none in its response to the defendants' Motion to Dismiss.   It appears the Plaintiff would ask that the defendants, and the Court, define it.

Without indicating the statute that is alleged to have been violated, Count Two of the Complaint does not even meet the lax notice pleading requirements under Fed.R.Civ.P. 8(a)(2).  A plaintiff is merely required to give "a short and plain statement of the claim showing that pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  This manner of pleading does not require that the plaintiff set out detailed facts of the basis of his claim. Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 103 (1957) (abrogated on other grounds).   What is required, though, is that the complaint "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. The failure to reference any statutory violation fails to show that the plaintiff is entitled to relief, and does not give the defendant

notice of the grounds for the plaintiffs claim (this is especially true since there is no common law claim for "predatory lending" in Pennsylvania).  The defendants should not have to guess which of the myriad of statutes that "predatory lending" refers to.  As a result, Count II of the Complaint is dismissed for failure to state a cognizable cause of action.  Dismissal here is also without prejudice to the Plaintiff filing a curative amendment within twenty (20) days.

## C.

As to Count IV of Plaintiff's Complaint, the defendants' contend that this count should be dismissed because the Complaint does not establish a *prima facie* case under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (the "Unfair Trade Practices Act").  The defendants' also argue that Count IV is legally insufficient in that it does not cite to a specific statutory reference.

Under the Fourth Count of the Complaint, the Plaintiff alleges, generally, violations of the Unfair Trade Practices Act.[8]  This Court has held in the past that allegations based upon violations of the Pennsylvania Unfair Trade Practices And Consumer Protection Act are subject to the heightened pleading standards of Fed.R.Civ.P. 9(b). <u>In re Balko</u>, 348 B.R. 684, 696 - 697 (Bankr. W.D.Pa. 2006). This is so because various provisions under the Pennsylvania Unfair Trade Practices And Consumer Protection Act provide causes of action for fraudulent and/or deceptive conduct. <u>Id.</u>  Count Four merely states that "the actions of K-2 Mortgage and their successors in interest constitute violations of the Pennsylvania

---

[8] Though not specifically referenced in the complaint, the Pennsylvania Unfair Trade Practices and Consumer Protection Law can be found at 73 P.S. § 201-1 et seq.

Unfair Trade Practices And Consumer Protection Law." (Docket No. 1, ¶ 47).  For the same reasons stated above relating to the common law fraud claim and the predatory lending claim, it appears that the Plaintiff has failed to adequately plead violations of the Pennsylvania Unfair Trade Practices And Consumer Protection Act with the requisite particularity required under Fed.R.Civ.P. 9(b) as to the non-K-2 Mortgage defendants.

Moreover, the broad statement that the actions of the defendants "constitute violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law" is insufficient to even satisfy the more liberal pleading standard under Fed.R.Civ.P. 8. *See e.g.,* <u>Bell Atlantic Corp. v. Twombly</u>, ___ U.S. ___, ___, 127 S.Ct. 1955, 1964-1965 (2007) ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").  The Court will therefore dismiss Count IV of the Complaint, without prejudice to the Plaintiff filing a curative amendment within twenty (20) days.

## VII.

For the reasons stated above, the Court denies the Motion to Dismiss insofar as the defendants suggested that the Plaintiff lacks standing or that the claims are barred by the statute of limitations.  The remaining contentions of the defendants are well founded, and the Motion to Dismiss is GRANTED.  As to all defendants (except K-2 Mortgage), Count I of the Complaint is dismissed.  With

respect to Counts II and IV, these counts are dismissed as to all defendants and

Count III was withdrawn.  Dismissal is without prejudice to the Plaintiff filing a

curative amendment within twenty (20) days.  The failure of the Plaintiff to file a

curative amendment within 20 days, or obtain a further extension of time for

cause shown, will result in the Complaint being dismissed in its entirety as to all

defendants (except K-2 Mortgage as to Count I) without further notice and/or

hearing.


Date: May 30, 2008                    /s/    Jeffery A. Deller
                                      Jeffery A. Deller
                                      United States Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ROY J. MCCONNELL, | ) | Case No. 07-70724-JAD |
| | ) | |
| | ) | |
| Debtor. | ) | Chapter 13 |
| | ) | |
| _____ | ) X | |
| | ) | |
| ROY J. MCCONNELL, | ) | |
| | ) | |
| | ) | Adversary No. 07-07034-JAD |
| Plaintiffs, | ) | |
| | ) | Related To Document No. 7 |
| vs. | ) | |
| | ) | |
| K-2 MORTGAGE, d/b/a THE REAL | ) | |
| ESTATE CLOSING COMPANY, LLC, | ) | |
| DECISION ONE MORTGAGE | ) | |
| COMPANY, LLC, WASHINGTON | ) | |
| MUTUAL HOME LOANS, M & T | ) | |
| BANK, COUNTRYWIDE HOME | ) | |
| LOANS, and HSBC MORTGAGE | ) | |
| SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) X | |

## ORDER OF COURT

**AND NOW**, this **30<u>th</u>** day of **May**, **2008**, upon consideration of the

Defendants Decision One Mortgage Company, LLC and HSBC Mortgage Services

Inc.'s Motion To Dismiss Plaintiff's Complaint Pursuant To Fed.R.B.P. 7012 and

Fed.R.Civ.P. 12(b)(6), and with due consideration of the record made by the parties

00001915.WPD                                    -1-

in these proceedings and for the reasons stated in the Memorandum Opinion of

even date herewith, the Court **HEREBY ORDERS, ADJUDGES AND DECREES**

that:

1.    The Motion To Dismiss The Complaint is **GRANTED** in favor of Decision One Mortgage Company, LLC and HSBC Mortgage Services Inc.

2.    Count One of the Complaint is **DISMISSED WITHOUT PREJUDICE** to the Plaintiff filing a curative amendment within twenty (20) days as to Decision One Mortgage Company, LLC, Countrywide Home Loans, and HSBC Mortgage Services.  Count One is **NOT DISMISSED** to defendant K-2 Mortgage.

3.    Counts Two, and Four of the Complaint are **DISMISSED WITHOUT PREJUDICE** to the Plaintiff filing a curative amendment within twenty (20) days as to all defendants.

4.    Count Three of the Complaint is **DENIED AS WITHDRAWN** by the plaintiff/debtor at the hearing.

Dated: May 30, 2008                          ___/s/ Jeffery A. Deller_____
                                             Jeffery A. Deller
                                             United States Bankruptcy Judge

**CASE ADMINISTRATOR TO MAIL**
**(With Memorandum Opinion) TO:**

cc:   Mary K. Wheeler, Esq., Counsel To Plaintiff/Debtor
      Michelle K. Carson, Esq., Counsel For Decision One Company and HSBC Mortgage Services
      Charles A. Bierbach, Esq., Counsel For K-2 Mortgage
      Martin C. Bryce, Jr., Esq., Counsel For Countrywide Home Loans, Inc.
      Ronda J. Winnecour, Esq., Chapter 13 Trustee
      Office of U.S. Trustee

00001915.WPD                          -2-